* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to, receive further evidence, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties. Key Risk Insurance Company is the carrier for employees of defendant in plaintiff's classification.
3. Both the plaintiff and the defendant are subject to the Act.
4. Plaintiff was the employee of defendant-employer Western Piedmont Community College on June 2, 1999.
5. Plaintiff-employee's average weekly wage for the purposes of this action is $307.62.
 * * * * * * * * * * * ORDER
Plaintiff's Motion that Certain Pleadings and Documents Be Included in the Record is granted. Plaintiff's Motion with attached documents shall be added to the transcript exhibits following page Ex. P. 274 and shall be marked as "post hearing exhibits."
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. The issues before the Full Commission are: (a) whether defendants engaged in improper ex-parte communications with Dr. Fitzgerald; (b) whether defendants violated various discovery and rehabilitation rules; and (c) whether defendants should be sanctioned.
2. Plaintiff is a permanent state employee. On June 3, 1999, while employed by Western Piedmont Community College (hereinafter, Western Piedmont) in the housekeeping department, plaintiff bumped her right knee into a chair as she was carrying pots and pans in the course of her employment. Thereafter, she came under the care and treatment of Dr. Myron Smith. An MRI performed on July 16, 1999 revealed a fray of the posterior horn of the medial meniscus, a Baker's cyst and chondromalacia. Plaintiff underwent knee surgery on July 27, 1999, during which Dr. Smith debrided the meniscus and performed chondroplasty to address the degenerative condition of plaintiff's right knee.
3. Defendants accepted the compensability of plaintiff's claim on a Form 60 dated June 18, 1999. Plaintiff has received temporary total disability compensation benefits at the rate of $205.09 per week continuously since her injury.
4. Plaintiff participated in a work hardening program and Dr. Smith opined that plaintiff had reached maximum medical improvement by February 7, 2000. He imposed work restrictions for plaintiff of standing no more than 1/3 of the workday, walking no more than 10% of the workday, no lifting more than 10 pounds, no carrying more than 10 pounds, no pushing or pulling more than 10 pounds, no climbing stairs or ladders, and no stooping or bending more than 1/3 of the workday. Based upon these restrictions, plaintiff was unable to return to her housekeeping job at Western Piedmont. Consequently, vocational rehabilitation efforts were instituted in an effort to assist plaintiff in locating suitable employment.
5. During plaintiff's initial interview with the vocational rehabilitation professional, Stephanie Mitchell from Corvel Corporation on March 27, 2000, the rehabilitation professional noted that plaintiff was having emotional problems and recommended: "Ms. Conley may benefit from psychological counseling . . . since she appears to be having difficulty with her disability and how it will impact her vocational future." Defendants would not approve psychological counseling for plaintiff at that time.
6. Lynn Key was the claims adjuster on the case during all relevant periods of time herein. Her claims adjuster records noted that in May 2000, "voke is transferred back to Stephanie Mitchell and she indicates at intial meeting that employee is very depressed and seems in need of psychological counseling, which we deny."
7. The initial vocational rehabilitation efforts to assist plaintiff in locating suitable employment were limited, in part, due to plaintiff's lack of a high school education. The vocational rehabilitation professional assisting plaintiff in her job search efforts determined that the success of job search efforts would be significantly greater if plaintiff obtained a GED.
8. Defendants made arrangements for plaintiff to participate in GED courses at Western Piedmont. Although she initially refused, plaintiff subsequently agreed to attend GED classes at Western Piedmont, the place where she had been employed at the time of injury.
9. On March 27, 2001, plaintiff's family doctor, Dr. Thomas Atkinson, noted that he felt plaintiff needed counseling for severe depression resulting from "the combination of the pain in her knee, her inability to have gainful employment, and her uncertain future." Defendants refused to provide the psychological counseling for plaintiff recommended by Dr. Atkinson.
10. Plaintiff eventually stopped attending GED classes and in June 2002, defendants filed a Motion to Compel plaintiff's attendance which was granted by Order of the Industrial Commission filed on October 17, 2002.
11. On November 4, 2002, plaintiff filed a request for hearing seeking authorization for psychological counseling. In response, defendants requested that plaintiff submit to an independent psychological evaluation by Terrence Fitzgerald, Ph.D.
12. Plaintiff was initially scheduled for a psychological evaluation with Dr. Fitzgerald on Monday, December 16, 2002. On Friday, December 13, 2002, plaintiff advised defendants she would not attend the evaluation by Dr. Fitzgerald as scheduled, stating that his office was too far from her home in Morganton to travel. Plaintiff instead, scheduled and attended an evaluation with D. Scott Cutting, Ph.D., a psychologist of her choice, on or about December 17, 2002. Dr. Cutting was of the opinion that plaintiff needed psychological counseling before she could proceed with GED classes.
13. Plaintiff subsequently agreed to an evaluation by Dr. Fitzgerald, conditioned upon defendants providing transportation to the visit. Dr. Fitzgerald performed an independent psychological evaluation of plaintiff on January 29, 2003, and his report became available to the parties on February 10, 2003. Dr. Fitzgerald did not enter into a psychologist/patient relationship because he was retained by defendants to render an expert medical opinion on issues defendants' attorney expressly asked him to address. He testified that his evaluation was for fact finding purposes and to make recommendations for further treatment.
14. In his February 2003 report, Dr. Fitzgerald opined that plaintiff was experiencing situational depression, for which he recommended a plan of treatment. Dr. Fitzgerald also recommended that plaintiff abstain from participating in GED classes, pending improvement of her depression through treatment.
15. A hearing was scheduled in this matter for Monday, February 15, 2003, on the issue of whether defendants should be required to provide psychological treatment for plaintiff. Also pending was plaintiff's motion dated February 12, 2003, for relief from the Order of the Commission dated October 17, 2002 compelling plaintiff to attend GED classes, based on the opinion of Dr. Atkinson and the subsequent corroborating opinions of Dr. Cutting and Dr. Fitzgerald that plaintiff was unable to attend GED classes because of her depression.
16. After receiving the evaluation findings and recommendations of Dr. Fitzgerald, defendants entered into a Consent Order agreeing to provide plaintiff with psychological counseling in her home town of Morganton and further agreed to set-aside the October 17, 2002 Order compelling plaintiff's attendance at GED classes. The Consent Order was signed and filed by the Deputy Commissioner on February 21, 2003.
17. After Dr. Fitzgerald made his treatment recommendations in the independent psychological evaluation that he performed as defendants' retained expert, defendants sought to retain Dr. Fitzgerald as plaintiff's treating psychologist without the knowledge or consent of the plaintiff. Lynn Key directed the medical rehabilitation professional, Camille Miller, RN, to contact Dr. Fitzgerald to determine whether he would be willing to treat the plaintiff. Defendants agreed to pay Dr. Fitzgerald $500.00 per session to travel to Morganton to treat the plaintiff. Dr. Fitzgerald did not have a practice established in Morganton and needed a space to treat plaintiff which defendants also agreed to arrange. Plaintiff argues that the $500.00 fee was outside the Industrial Commission Fee Schedule guidelines. The Full Commission is unable to discern how much of the fee was to cover expenses.
18. Camille Miller is an employee of defendant-carrier, Key Risk Insurance Company. She was assigned as an independent rehabilitation professional under Industrial Commission rules to provide medical case management for plaintiff in this case. She testified that she had a meeting outside of plaintiff's presence on February 13, 2003 with Dr. Fitzgerald to discuss what Ms. Miller described as being related to transportation and the need for a physician to handle medical management of plaintiff's case. Dr. Fitzgerald wrote a note in his file summarizing the discussion. Ms. Miller did not completely agree with Dr. Fitzgerald's summary of their discussion and there were some details she did not recall. Ms. Miller testified that she reported the substance of her conversation with Dr. Fitzgerald on the same day to Lynn Key, the claims adjuster, as was her usual practice, but she did not report this conversation to plaintiff or her attorney. She testified that Dr. Fitzgerald initiated the conversation while she was at his office on another case. It appears that Dr. Fitzgerald had been previously contacted at the direction of Ms. Key to request that he provide psychological treatment to plaintiff. Dr. Fitzgerald discussed with Ms. Miller plaintiff's treatment needs and the approach he wanted to take in treating plaintiff.
19. Dr. Fitzgerald sent a copy of his note documenting their conversation to Ms. Miller, but she did not send a copy of the note to plaintiff or her attorney. Ms. Miller had been assigned as a rehabilitation professional under the Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims when she had the meeting with Dr. Fitzgerald on February 13, 2003. Ms. Miller worked for Corvel, which was owned by defendant-carrier, Key Risk Insurance.
20. Camille Miller violated the following Industrial Commission rehabilitation rules: VI. (F, G, H) and VII.(D, G, H.)
 VI. COMMUNICATIONS
 F. The RP shall provide copies of all correspondence simultaneously to all parties to the extent possible, making every effort to effect prompt service.
 G. The RP shall make periodic written reports documenting accurately and completely the substance of all significant activity in the case, including the rehabilitation activity defined above, which reports shall be provided to all parties at the same time. A worker not represented by counsel shall be furnished with a copy of each periodic report, or, in the alternative, the RP shall advise orally or in writing (at least as often as reports are produced) as to the plan for and progress of the case, and shall advise the worker that he or she has the right to request a copy of the reports under Industrial Commission Rule 607.
 H. Frequency and timing of periodic reports will be determined at the time of referral and will depend upon the type of service provided. However, prompt communication of significant activity to all parties by telephone, telecopier, electronic media, or letter should occur when information pertinent to the rehabilitation process is obtained, when changes or revisions are recommended or occur in medical or vocational treatment plans, or on any other occasion when the worker's understanding and cooperation is important to the implementation of the rehabilitation plan.
 VII. Interaction with Physicians.
 D. When the RP determines that it is necessary to communicate with a physician other than at a joint meeting, the RP shall first notify the injured worker, or his/her attorney if represented, of the RP's intent to communicate and the reasons therefore. The RP need not obtain the injured worker's or attorney's prior consent for the following types of communication:
 Whenever an RP communicates with a physician without the prior consent or presence of the injured worker, the RP must promptly document the reasons for and the substance of the communication and promptly report such to the injured worker or attorney, if represented, pursuant to Rule VI.
 G. If a party requests a second opinion or an independent medical examination, the RP's involvement is limited to assembling and forwarding medical records and information, and scheduling, coordinating, and, with the worker's consent, attending the appointment with that physician.
 H. The RP shall simultaneously send copies to the parties of all written communications to medical care providers, and shall accurately and completely record and report all oral communications.
21. Rehabilitation Professional Judith Williams is also an employee of Key Risk. She supervised Camille Miller when Ms. Miller worked on plaintiff's case and she was later assigned as medical case manager for plaintiff because the claims adjuster, Lynn Key, felt the case was complicated. Ms. Key instructed Ms. Williams to arrange for Dr. Fitzgerald to provide ongoing psychological treatment and for an orthopaedic re-evaluation with Dr. Myron Smith.
22. On March 17, 2003, Ms. Williams faxed a letter to plaintiff's attorney stating "that at the request of Lynn Key, Senior Claims Representative", she had scheduled an appointment for plaintiff with Dr. Fitzgerald at a Morganton address on March 25, 2003 at 10:00 a.m. and Dr. Myron Smith in Morganton on April 10, 2003. Plaintiff's attorney, by letter dated February 25, 2003, had advised plaintiff's medical case manager and defendant-carrier not to schedule any appointment for plaintiff without first contacting his office.
23. Plaintiff refused to accept treatment from Dr. Fitzgerald. Defendants filed a motion with the Industrial Commission seeking to either suspend compensation or compel plaintiff to receive treatment from Dr. Fitzgerald. The Executive Secretary denied defendants' motion by order filed April 23, 2003 stating, "It appearing that the question of the psychologist that plaintiff is to see is resolved, and that plaintiff will be seeing Dr. D. Scott Cutting, defendants' motion is hereby DENIED as moot."
24. On April 23, 2003, Ms. Williams' case report noted that the appointment with Dr. Fitzgerald was cancelled and that she had discussed the option of plaintiff receiving treatment with Dr. Cutting. In a letter dated April 23, 2003, Ms. Williams wrote plaintiff's attorney stating that Lynn Key would not authorize plaintiff to treat with Dr. Cutting and that Ms. Williams continued to approve Dr. Fitzgerald as plaintiff's treating psychologist. Plaintiff's attorney faxed Ms. Williams a copy of the Executive Secretary's order and repeated his request that an appointment be arranged for plaintiff to see Dr. Cutting.
25. On April 25, 2003, Ms. Williams sent plaintiff's attorney a faxed note stating, "Per conversation with Lynn Key, Senior Claims Representative today, she continued to decline authorization for an appointment for Ms. Conley to see Dr. Cutting."
26. On May 2, 2003, plaintiff's attorney sent a letter to Ms. Williams stating that her case activity reports concerning plaintiff gave no dates or details of her activities and requesting supplementation. Plaintiff's attorney reminded Ms. Williams that Industrial Commission Rehabilitation Rules required her to make periodic written reports documenting accurately and completely the substance of all significant activity in the case.
27. After receipt of the May 2, 2003 letter from plaintiff's attorney, Ms. Williams replied, stating that her report complied with "the usual standard for current reports" and that she had attached one additional "notation addendum." The addendum dated May 16, 2003 read as follows: "After several contacts, claims declined to authorize Dr. Cutting for counseling. Lynn Key, Senior Claim Representative continues to authorize Dr. Fitzgerald for counseling services. Mr. Gage's contact Linda was updated." Despite the order of Executive Secretary, Tracey Weaver, filed April 23, 2003, Ms. Key continued as of May 16, 2003 to disregard the order and to instruct Ms. Williams that only psychological treatment provided by Dr. Fitzgerald would be approved. Plaintiff had continuously pursued psychological counseling as recommended by her vocational rehabilitation professional since May, 2000. Additionally, Dr. Atkinson had diagnosed plaintiff as needing psychological treatment at least by March 27, 2001; the parties had entered a Consent Agreement whereby defendants agreed to provide psychological counseling on February 21, 2003 and plaintiff had still not received a psychological counseling as of May 16, 2003.
28. On May 23, 2003 Ms. Williams sent to plaintiff's counsel, copies of e-mails she had sent and received concerning activities related to plaintiff's file. In her letter, Ms. Williams stated that she did not consider e-mail notes to be "formal correspondence," but agreed to copy plaintiff's attorney immediately on future e-mails. Her letter further explained that the March 11, 2003 e-mail note referred to a contact she made with Dr. Fitzgerald's office (not Dr. Fitzgerald). She stated that Lynn Key, Senior Claims Representative, requested that she contact Dr. Fitzgerald's office to see if he would agree to travel to Morganton to treat the plaintiff. The March 12, 2003, e-mail documented that Ms. Williams e-mailed Lynn Key stating, "Dr. Fitzgerald will travel for $500.00/visit (total fee) — no additional [sic] mileage etc.) and two visits per month."
29. After numerous requests for approval of Dr. Cutting or some other psychologist other than Dr. Fitzgerald to treat plaintiff, Lynn Key finally authorized treatment by Dr. Cutting on July 21, 2003. By letter dated July 21, 2003, Ms. Williams wrote plaintiff advising that she had scheduled an appointment with Dr. Cutting on August 6, 2003. This was the same date Executive Secretary Weaver ordered defendants to comply with her Orders of February 21, 2003 and April 23, 2003, by authorizing payment for psychological counseling for plaintiff with a psychologist other than Dr. Fitzgerald within ten days. Defendants' delay in providing psychological counseling to plaintiff after the February 21, 2003 and April 23, 2003 Orders of the Executive Secretary and after the recommendation for same counseling by one doctor and two psychologists was unreasonable.
30. On September 18, 2003, Ms. Williams met with plaintiff at her attorney's office and an Initial Case Management Assessment was completed. In October, 2003, plaintiff's case was referred for vocational services and Ms. Williams closed her medical management file on October 29, 2003, "after review with Lynn Key, Senior Claims Representative."
31. Dr. Fitzgerald was deposed on June 22, 2004. Dr. Fitzgerald is Board certified as a Clinical Health Psychologist and has a post doctoral degree in Occupational Rehabilitation and Behavioral Medicine. He conducted an independent psychological evaluation of plaintiff on January 29, 2003. Defendants' attorney sent a letter to Dr. Fitzgerald asking to address several issues in his independent psychological evaluation.
32. On February 13, 2003, Dr. Fitzgerald documented what he called a "report of administrative contact." He testified that he was requested to change the status of the patient referral and consider treating the Plaintiff. He requested a meeting with Ms. Miller to get information on the reason for the change in status "on ethical grounds." He requested a meeting with Ms. Miller because she was the referral source. He acknowledged that on rare occasions psychologists and physicians do go from an Independent Medical Examination relationship to a treating relationship, but such change in status most commonly occurs in second opinion evaluations. He testified, "I try to keep these things very separate, because I think of them as very separate." Dr. Fitzgerald further testified that he likely sent Ms. Miller a copy of his note documenting their discussions within a day or two after it was written. Dr. Fitzgerald does not recall any further contact with defendants' medical case manager following the February 13, 2003 meeting with Camille Miller.
33. Dr. Fitzgerald further testified that he does consultations outside his office, but he could not recall a single time when he treated a patient outside his regular office. He did not recall being contacted by the Key Risk case manager and asked to come to Morganton to treat plaintiff.
34. Lynn Key is a litigation specialist responsible for adjusting claims for Key Risk Insurance. As part of her handling of a claim, she keeps a claims log of all activity on a claim, including contacts with defendants' attorney, settlement evaluations, amounts set aside in reserve, documentation of mail received and significant contacts with employees, attorneys, and others involved with the claim. Pursuant to plaintiff's discovery request, Ms. Key's claims log was produced to plaintiff; however, with some portions redacted.
35. Ms. Key's claims log documented numerous contacts with the medical and vocational rehabilitation professionals assigned to plaintiff's claim for the purpose of monitoring, obtaining updates and directing case activities. Ms. Key specifically requested documentation of any missed appointments or failure of plaintiff to cooperate for the purpose of suspending or terminating compensation.
36. Ms. Key initiated the request through plaintiff's assigned medical rehabilitation professional for Dr. Fitzgerald to provide treatment for plaintiff and agreed to compensate Dr. Fitzgerald $500.00 per visit to travel to Morganton to provide counseling for plaintiff. She also directed that an office space be secured for Dr. Fitzgerald to provide services to plaintiff in Morganton.
37. Part of the mistrust in this case resulted from having vocational rehabilitation professionals employed by defendant-carrier assigned to provide independent rehabilitation services to plaintiff. A further factor contributing to the lack of trust in the rehabilitation professionals assigned to plaintiff's case was the multiple contacts between the rehabilitation professionals and the claims adjuster, many of which plaintiff was not given notice. Also, even though Dr. Fitzgerald appeared to be unbiased in the finding and recommendations made in his independent psychological evaluation, and there is no evidence defendants tried to influence or taint his evaluation and recommendations, it invites mistrust for defendants to then retain him as treating psychologist without plaintiff's consent.
38. Dr. Fitzgerald understood the ethical dilemma of the change in relationship from defendants' medical expert to plaintiff's treating psychologist. Defendants' right to direct medical treatment does not include the right to force plaintiff to accept treatment under such circumstances. The Executive Secretary properly denied defendants' motion to compel plaintiff to accept treatment from Dr. Fitzgerald.
39. As to plaintiff's request for sanctions, the Full Commission has found as fact that Camille Miller violated Industrial Commission Rehabilitation Rules as set forth above. The sanction for such rule violation is removal from the case. Ms. Miller is no longer on the case.
40. Judith Williams did not initially fully comply with Industrial Commission Rehabilitation Rules, but her reasoning at the time for not timely supplying the substance of all e-mail communications on the case to plaintiff's attorney is excusable, although not legally sufficient. Since the rehabilitation professionals were employees of defendant-carrier Key Risk, there is an issue of whether Key Risk can be sanctioned for the conduct of their rehabilitation professionals when they are assigned to act independently. The Full Commission is of the opinion that once assigned to plaintiff's case, Ms. Miller and Ms. Williams were subject to the same sanctions provided by the Rehabilitation Rules as all other assigned rehabilitation professionals and their conduct as independent rehabilitation professionals is not imputed to Key Risk as defendant-carrier.
41. As to plaintiff's contention that defendants violated discovery rules by failing to respond to discovery requests, the Full Commission finds the following: On March 17, 2003 plaintiff's counsel served a second set of discovery requests upon defendants seeking to determine whether defendants had ex-parte contacts with Dr. Fitzgerald. On April 26, 2003, defendants served responses to plaintiff's discovery. On June 13, 2003 plaintiff filed a Motion to Compel defendants' further responses to her March, 2003 discovery. On July 21, 2003 the Executive Secretary entered a discovery order overruling defendants' objections to plaintiff's March, 2003 discovery and compelling defendants to provide further responses to plaintiff's discovery requests. In response to the order of the Executive Secretary, defendant, produced copies of computer log note entries, but redacted entries not covered by plaintiff's discovery. On September 15, 2003, plaintiff filed a Motion to Show Cause and for Sanctions and a supplement to her motion dated September 30, 2003. Defendants requested an in camera
inspection by the Commission to determine whether the redacted portions of the logs were discoverable. The Executive Secretary issued a discovery order on January 23, 2004 compelling defendant to provide plaintiff with copies of the unredacted logs. Defendant appealed from this Order.
42. A hearing was conducted by Deputy Commissioner Taylor upon defendants' appeal from an Order of the Executive Secretary filed on January 23, 2004 ordering defendants to produce the adjuster's log notes and on plaintiff's Motion for Sanctions regarding some discovery issues. Defendants agreed to rely on the pleadings and discovery and not present any lay witness testimony. The testimony taken at hearing was related to plaintiff's Motion for Sanctions. The Deputy Commissioner vacated the January 23, 2004 Order of the Executive Secretary and found that defendant had produced all discoverable items. The Deputy Commissioner also found and concluded that defendants did not engage in improper ex-parte communications with Dr. Fitzgerald.
43. Plaintiff filed an appeal to the Full Commission. Before the Full Commission, plaintiff is contending, (1) that defendants did engage in improper ex parte communications with Dr. Fitzgerald, (2) defendants violated various discovery and rehabilitation rules and (3) defendants should be sanctioned.
44. As to plaintiff's request for sanctions for defendants' alleged violation of discovery rules, the Full Commission is of the opinion that defendants produced all discoverable log notes to plaintiff and no sanctions are warranted on this issue. Defendants incorrectly stated in their August 20, 2003 supplemental answers to plaintiff's second discovery requests that Dr. Fitzgerald was paid $212.76 for this January 29, 2003 evaluation. These answers were verified by Lynn Key. Based on the evidence presented, Dr. Fitzgerald was paid $1,025.00 in two installments — $212.76 and $812.24. It is unclear, however, when the second installment was paid, but plaintiff also asked for the amount billed. Defendants also incorrectly answered discovery stating there had been no contact between anyone employed by Key Risk and Dr. Fitzgerald. Camille Miller and Judith Williams were employees of Key Risk when they contacted Dr. Fitzgerald; however they were assigned at the time as independent rehabilitation professionals. Lynn Key's testimony that the mistake was due to incorrect information given to her by her supervisor is accepted as credible. As to defendants' violation of rehabilitation rules, the Full Commission has found above that an employee of defendant-carrier who was assigned to plaintiff's case to serve as an independent medical rehabilitation professional did violate the Industrial Commission Rehabilitation Rules as set forth above.
45. As to plaintiff's contention that defendants' had improper ex-parte communications with Dr. Fitzgerald, the Full Commission finds that defendants' initial contacts with Dr. Fitzgerald were to retain him to do an independent psychological evaluation. Dr. Fitzgerald understood and the evidence supports that defendants retained Dr. Fitzgerald as their own medical expert, not for a second opinion. Accordingly, defendants' contention that no doctor-patient relationship was created is persuasive. However, when defendants sought to change the relationship of Dr. Fitzgerald to treating psychologist and Dr. Fitzgerald agreed, defendants were bound by the law governing ex-parte communications. Since plaintiff refused treatment from Dr. Fitzgerald, she never had a psychologist-patient relationship with Dr. Fitzgerald; however, the contacts made by the rehabilitation professional with Dr. Fitzgerald should have been communicated to plaintiff's attorney and it was a violation of the Industrial Commission Rehabilitation Rules to withhold this information from plaintiff.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Key Risk's employee and assigned vocational rehabilitation professional Camille Miller, violated Industrial Commission Rehabilitation Rules VI. (F, G, H) and VII. (D, G, H). The sanction of removal from the case is not warranted because she is no longer assigned to the case.
2. Key Risk's employee and assigned vocational rehabilitation professionals were obligated to provide copies of all e-mail correspondence generated concerning substantive activities in plaintiff's case, including and especially e-mail correspondence to and from the claims adjuster. Rehabilitation Professional Judith Williams had a reasonable excuse for her initial failure to comply and no sanction is warranted under the facts of this case.
3. Dr. Fitzgerald was retained as defendants' medical expert witness when he performed an independent psychological evaluation of plaintiff. His fees as an expert witness do not require approval of the Commission. Booker-Douglas v. JS TruckService, ___ N.C. App. ___, 630 S.E.2d 726 (2006),discretionary review denied, ___ N.C. ___, ___ S.E.2d ___,2006 WL 2939226 (2006). Defendants were not successful in their attempt to retain Dr. Fitzgerald as a treating psychologist; therefore, the fee quoted requires no further discussion herein.
4. Plaintiff is not obligated to accept treatment from a medical provider defendants originally retained as their medical expert to gather information for their benefit pursuant to an independent psychological evaluation. Defendants cannot assert that no psychologist-patient relationship exists, allowing them to freely communicate with their retained medical expert while simultaneously asserting their right to direct medical treatment by compelling plaintiff to accept treatment from their retained medical expert after the independent psychological evaluation has been performed. N.C. Gen. Stat. § 97-27. The Executive Secretary correctly ordered that plaintiff did not have to accept psychological services from Dr. Fitzgerald.
5. Defendant-employer and defendant-carrier did not engage in ex-parte communication with Dr. Fitzgerald. Defendant-carrier's employees were acting in their role as independent rehabilitation professionals when they contacted Dr. Fitzgerald's office. Defendants' attorney's contact with Dr. Fitzgerald was not ex-parte as Dr. Fitzgerald had been retained as defendants' medical expert at that time.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-carrier's employee, Camille Miller violated the Industrial Commission Rehabilitation Rules. Removal from the case is not necessary, as she is no longer assigned to the case.
2. Defendant-carrier's employee, Judith Williams and any vocational rehabilitation professional currently assigned, shall promptly provide copies of all e-mail correspondence and any other significant case activity related to plaintiff's claim to plaintiff's attorney. Defendants have produced all discoverable claims log notes to plaintiff.
3. Defendants shall pay to plaintiff costs associated with plaintiff's efforts to seek enforcement of the February 21, 2003 and April 23, 2003 Orders of the Executive Secretary relating to psychological treatment for plaintiff. Plaintiff's attorney shall submit an itemized statement to the Industrial Commission showing time expended and costs.
4. In the discretion of the Full Commission, no sanctions are issued.
5. Defendants shall pay the costs.
This the __ day of November, 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER