* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act. *Page 2 
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Federal Express Corporation was a self-insured employer with Sedgwick CMS as the servicing agent.
4. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
5. Plaintiff sustained a specific traumatic incident, which resulted in a back injury, on April 19, 2004 while employed as a courier with defendant-employer. Plaintiff sustained no lost time, and therefore did not receive compensation for temporary total disability. The third-party administrator paid for plaintiff's medical treatment.
6. Plaintiff's average weekly wage is $732.36, which would yield a compensation rate of $488.24.
7. Plaintiff is still employed as a courier with defendant-employer.
In addition, the parties stipulated into evidence the following:
1. Discovery responses;
2. Packet of current medical records and reports;
3. Packet of prior medical records and reports; and
4. Additional documents submitted February 22, 2007.
The Pre-Trial Agreement dated February 21, 2007, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff, who was fifty years old at the time of the evidentiary hearing, began working for defendant-employer in August 1996 as a courier. His duties included unloading and sorting packages in the mornings when the aircraft brought them in, helping to load the packages onto trucks, driving a truck to deliver the packages on his route, stopping at homes and businesses to deliver and pick up packages and then returning the packages he picked up during the day to defendant's facility. The route he drove during the time in question had eighty to one hundred stops. Couriers were expected to handle packages weighing from one pound to 150 pounds. Although the couriers could get help with the heavy ones when they were working at the station, once they drove away, they had to handle the packages alone. However, most of the packages weighed less than ten pounds.
2. On April 19, 2004 while driving his route, plaintiff went to Hatteras Yachts, one of his regular stops. The company had left a large box on the floor and some small packages on the counter for him to pick up. Since the label on the box stated a weight of eight pounds, plaintiff placed the small packages on top of it and then bent over to pick up all of them together. The box actually weighed so much that he could not get it off the floor when he tried to lift it. He felt a sudden pop between his shoulder blades and pain shot up to his neck and down his back.
3. Plaintiff reported his injury to his supervisor and went to the Urgent Care facility of Eastern Carolina Internal Medicine, where he was seen by Dr. McNabb. Dr. McNabb diagnosed him with a thoracic strain, prescribed medication for him and noted that he did not want a note to be out of work. *Page 4 
4. On April 23, 2004 plaintiff saw his regular internist, Dr. Robert Monteiro of Eastern Carolina Internal Medicine, for persistent pain between his shoulder blades. Dr. Monteiro advised plaintiff not to lift more than 25 pounds for the next two weeks. By the follow-up appointment on May 7, 2004, plaintiff was feeling much better, although he still had some persistent pain in his upper thoracic spine. Dr. Monteiro prescribed a different medication for him but did not see him in follow up for his injury after that appointment. Plaintiff returned to Dr. Monteiro in August 2004 regarding his history of hypertension and mentioned that he was still having some back pain, but the symptoms were not significant enough to warrant treatment beyond over-the-counter ibuprofen which he had been taking.
5. During the next year, plaintiff continued to experience increased upper back pain, which limited his activities away from work. Despite the pain, he was able to perform his normal job duties but had to take pain medication regularly for his discomfort. Although it was necessary for him to see Dr. Monteiro periodically in order to get prescriptions for some general health problems, he did not mention upper back pain to the doctor at those appointments.
6. In late October or early November 2005, plaintiff began to complain of arm and shoulder pain to his wife. His workload picked up in November as the busy Christmas season approached. On November 17, 2005 his pain reached such a high level that he returned to Eastern Carolina Internal Medicine and saw Dr. Kristina Rowe. Plaintiff reported that the pain was primarily between his shoulder blades and was like the pain he had experienced after trying to lift the heavy box in April 2004. The pain extended to his left shoulder. He was also having some low back pain at that time. Although his workload had increased, he was not aware of having had a specific injury. Dr. Rowe prescribed medication for him and advised him to return if his symptoms did not improve. *Page 5 
7. On November 22, 2005 plaintiff saw Dr. Monteiro for complaints of severe pain from his upper back, across his shoulder and into his left arm. He indicated that he had had a couple of recurrent problems with upper back pain since the injury at Hatteras Yachts. Dr. Monteiro prescribed a steroid dose pack and ordered an MRI of his thoracic spine. The MRI was negative so the doctor ordered a cervical spine MRI. That test revealed what appeared to be a disc bulge and osteophyte complex at C6-7 which was encroaching on the left nerve root as well as causing a mass effect on the spinal cord.
8. Dr. Monteiro took plaintiff completely out of work and referred him to Dr. Reeg. Dr. Reeg's physician's assistant, William Payne, examined him on January 12, 2006 and ordered physical therapy. Since defendants denied liability for workers' compensation benefits, plaintiff did not undergo the therapy. Plaintiff did undergo three epidural steroid injections. Afterwards, a functional capacity evaluation was performed and plaintiff was then allowed to return to work on a part-time basis at light duty.
9. In May 2006 plaintiff informed Dr. Monteiro's office that he was not satisfied with Dr. Reeg, so an appointment was scheduled with Dr. Michael Haglund, a neurosurgeon at Duke Medical Center. Dr. Haglund examined plaintiff on June 12, 2006. In view of his persistent symptoms and MRI findings, the doctor recommended surgery. On June 27, 2006 Dr. Haglund performed surgery to decompress and fuse the C6-7 interspace. During the operation, the doctor observed little or no degenerative changes in the interspace, just a large herniated disc. After surgery, Dr. Haglund only saw plaintiff on one occasion, August 14, 2006. At that time, plaintiff's symptoms were significantly improved, although he continued to experience mild neck and shoulder pain intermittently. *Page 6 
10. Dr. Monteiro then followed plaintiff for his upper back condition in addition to his general health problems. Plaintiff underwent a DOT examination by Dr. Rowe on November 21, 2006. On December 5, 2006, plaintiff returned to Dr. Monteiro reporting that he had gone back to work and was doing fairly well, although he had to take pain medication after he left work for the day.
11. Dr. Monteiro testified to a reasonable degree of medical certainty that, more likely than not, plaintiff's injury in April 2004 was to his cervical spine. Dr. Monteiro also testified to a reasonable degree of medical certainty that, more likely than not, plaintiff's condition in November 2005 and subsequent surgery in July 2006 were related to the initial April 2004 injury.
12. Dr. Haglund indicated that he believed plaintiff likely injured his C6-7 disc in April 2004 but did not herniate it at that time. However, by returning to a job performing heavy lifting where he already had a slightly injured disc, plaintiff herniated his C6-7 disc by November 2005. Although, Dr. Haglund expressed this as his opinion as to the cause of plaintiff's herniated disc and subsequent surgery, Dr. Haglund could not state to a reasonable degree of medical certainty that the April 2004 injury was more likely than not the cause of the herniated disc and subsequent surgery.
13. Plaintiff sustained a compensable injury on April 14, 2004 when he attempted to lift a box and felt a sudden pop between his shoulder blades. The greater weight of the credible medical evidence proved that he damaged the C6-7 disc when he lifted the box. Although sufficient disc material did not rupture out of the disc to cause nerve root compression until November 2005, the ruptured disc for which he was treated beginning in November 2005 was a proximate result of the specific traumatic incident which occurred on April 19, 2004. *Page 7 
14. The parties stipulated that plaintiff did not have any lost time from work immediately following his injury. He continued working at his regular wages until December 23, 2005. He was then unable to work in any capacity until March 17, 2006 when the company gave him a part-time light duty position working in the front office. During the time he worked in that position, he was unable to earn as much as his former average weekly wage. However, the evidence submitted was not sufficient to determine his actual earnings. From the date of surgery on June 27, 2006 until November 5, 2006 he was again unable to work and earn wages, but he returned to work in his regular job and wages on November 6, 2006.
15. Plaintiff received short-term disability benefits and possibly long-term disability benefits while he was out of work. He thought that the disability benefits were fully funded by defendant-employer.
16. By January 10, 2007 plaintiff reached maximum medical improvement. He sustained a five percent permanent partial impairment to his back as a result of the April 19, 2004 specific traumatic incident.
17. As an alternative claim, plaintiff filed a Form 18 in what would become I.C. No. 614001 alleging that his ruptured disc constituted an occupational disease. Although Dr. Monteiro was of the opinion that plaintiff was placed at an increased risk of developing a ruptured disc in his back due to his job duties with defendant-employer, the doctor believed that anyone who engaged in work requiring physical labor was at an increased risk for having a disc herniation. Consequently, his testimony did not establish that plaintiff was at an increased risk of developing a ruptured disc as compared to the general public.
18. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer *Page 8 
and which excluded all ordinary diseases of life to which the general public was equally exposed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On April 19, 2004, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. §97-2(6).
2. Considering the lengthy delay before the onset of radicular symptoms, plaintiff had the burden of proving that his herniated disc was a proximate result of the April 19, 2005 specific traumatic incident. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 (1980). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Id. Medical certainty is not required from the expert. If an expert is unable to state with certainty that there is a nexus between an event and an injury, his testimony relating the two is at least some evidence of causation if there is additional evidence that establishes the expert's testimony as more than conjecture. Booker-Douglas v. JS Truck Serv., Inc.,178 N.C. App. 174, 630 S.E.2d 726 (2006), disc. review denied, 360 N.C. 644,636 S.E.2d 803 (2006); Adams v. Metals USA, 168 N.C. App. 469,608 S.E.2d 357, aff'd per curiam, 360 N.C. 54, 619 S.E.2d 495 (2005). In the case at hand, Dr. Haglund was unable to testify to a reasonable degree of medical certainty but did provide his opinion that he believed that plaintiff's April 2004 injury was the proximate cause of plaintiff's *Page 9 
herniated disc. Furthermore, Dr. Monteiro did testify to a reasonable degree of medical certainty that, more likely than not, plaintiff's herniated disc and surgery were caused by the April 2004 injury. The testimony from the two treating physicians, combined with plaintiff's own testimony, provides competent evidence of causation. Thus, plaintiff has met his burden of proving by the greater weight of the credible medical evidence presented in this case that the herniated cervical disc was a proximate result of the injury by accident giving rise to this claim. N.C. Gen. Stat. § 97-2(6); Click v. Pilot Freight Carriers,Inc., 300 N.C. 164 (1980); Holley v. ACTS, Inc., 357 N.C. 228 (2003).
3. Plaintiff is entitled to compensation at the rate of $488.24 per week for 30 5/7ths weeks for the temporary total disability he sustained as a result of this injury by accident, but subject to a credit in favor of defendants for employer-funded disability payments made to him during the periods he was out of work. N.C. Gen. Stat. §§ 97-29; 97-42.
4. Plaintiff is entitled to compensation for temporary partial disability at the rate of 66 2/3rds percent of the difference between his former average weekly wage of $732.36 and the weekly wages he was able to earn from March 17 through June 26, 2006, but subject to a credit for employer-funded disability benefits paid to him that during period. N.C. Gen. Stat. §§ 97-30; 97-42.
5. Plaintiff is entitled to compensation at the rate of $488.24 per week for 15 weeks for the five percent permanent partial disability he sustained to his back as a result of this injury by accident. N.C. Gen. Stat. § 97-31(23).
6. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25. *Page 10 
7. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment and which excludes all ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13);Booker v. Duke Medical Center, 297 N.C. 458 (1979).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $488.24 per week for 30 5/7ths weeks for his temporary total disability, subject to a credit in favor of defendants for employer funded disability benefits paid to him during the periods of his total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff for temporary partial disability at the rate of 66 2/3rds percent of the difference between his former average weekly wage of $732.36 and the weekly wages he was able to earn from March 17, 2006 through June 26, 2006, subject to a credit in favor of defendants for employer-funded disability benefits paid during that period.
3. Defendants shall pay compensation to plaintiff at the rate of $488.24 per week for 15 weeks for his permanent partial disability. This compensation has also accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. *Page 11 
5. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Coleman to be distributed with Mr. Wentz in accordance with their pre-existing agreement.
6. Plaintiff's claim for benefits for an occupational disease is DENIED.
7. Defendants shall pay the costs.
This the 22nd day of January, 2007.
S/______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/________________ PAMELA T. YOUNG CHAIR